MATTHEW WHITE, Respondent, *v.* JESSE HOYT et al., Appellants.

Where the terms of a promise admit of more senses than one, it is to be interpreted in the sense in which the promisor had reason to suppose it was understood by the promisee.

*It seems*, that while, as a rule, the interpretation of written instruments is a question of law for the court, yet, when the interpretation of a promise depends upon the sense in which words are used, or in which the promisor had reason to suppose that the promisee understood them, which is to be determined from the relation of the parties and the surrounding circumstances, it becomes a mixed question of law and fact, and may be submitted, with proper instructions, to a jury.

It is not necessary, in order to uphold a promise based upon the surrender or compromise of a claim, to show that the claim was valid or enforceable at law. The settlement of a doubtful claim is a good consideration.

Statement of case.

Plaintiff, upon the assurance that G. & Son would furnish 20,000 bushels of barley for malting, agreed to malt the same at a reduced price. G. & Son delivered several lots of barley under the agreement. For two of the lots, plaintiff issued to G. & Son negotiable warehouse receipts, stating that the barley was to be manufactured into malt, the product "deliverable to their order, on payment of the charges accrued thereon." A part of the malt was delivered to G. & Son, who made a payment on general account, not sufficient to pay the charges on the malt delivered. Defendants, upon indorsement to them of the two receipts, made advances to G. & Son thereon to the full value. G. told plaintiff that defendants would pay the balance due for malting all the barley, to the truth of which statement defendants, by their action, gave color. When defendants sought to remove the malt, plaintiff asserted a lien upon all the malt in his possession for the general balance due, and refused to deliver any of the malt, except upon payment or assumption by defendants of such balance. Defendants requested a statement of the charges upon the two lots specified in the receipt. A statement was given but with the express declaration that plaintiff held the malt subject to additional charges. Plaintiff, by letter, asked to have the receipts returned, and to know that defendants guaranteed his claim against the malt. · Defendants replied, returning a receipt for the malt then called for, saying, "Of course, we consider ourselves bound for the charges on this malt." Plaintiff thereupon delivered the malt, and subsequently delivered the lot covered by the other receipt. In an action to recover the charges, *held,* that plaintiff had the right to believe, from defendants' answer, that they complied with his demand, and that it should be so construed; at least, that the question, as to whether a promise to pay the charges was made, was proper to be submitted to a jury, and the evidence justified a finding of a promise; that whatever claim of title defendants had adverse to plaintiff's lien, they waived; that, by the waiver and assumption of liability, they induced plaintiff to deliver the malt; and that, therefore, there was a sufficient consideration for the promise, and defendants were bound thereby.

(Argued April 18, 1878; decided May 21, 1878.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover a balance of charges alleged to be due plaintiff upon a quantity of malt delivered to defendants upon the faith of their promise to pay such balance.

The facts appear sufficiently in the opinion.

*John A. Mapes*, for appellant. Plaintiff had no lien on the malt derived from the barley mentioned in the two receipts, except for his charges for malting those two specific lots. (*Lenckhardt* v. *Cooper*, 2 Hodg., 160; 3 Bing. N. C., 99; *Houghton* v. *Mathews*, 3 Bos. & P., 494; *Rushforth* v. *Hatfield*, 6 East, 528; 2 Kent's Com., 634, 636; Edward on Bailment, 308, 548; *Schmidt* v. *Blood*, 9 Wend., 268; *Stemmen* v. *Wilkins*, 7 Watts & Serg. [Pa.] R., 466; *Scott* v. *Jester*, 8 Eng. [Ark.] R., 437; *Hale* v. *Barrett*, 26 Ill., 195; *Morgan* v. *Congdon*, 4 N. Y., 552.) The contract, if an entirety, was effectually severed by plaintiff's issuing the two receipts for the two lots in question, by their transfer to defendants, and notice thereof to plaintiff before he delivered any of the other lots to Gordon & Son. (*McCombie* v. *Spader*, 1 Hun, 196; *Lickbarrow* v. *Mason*, 3 T. R., 63; *Gibson* v. *Stevens*, 8 How. [U. S.], R., 384; *Spear* v. *Travis*, 4 Camp., 251; *Bunney* v. *Poyntz*, 4 Barn. & Ad., 568; *Bk. of Rochester* v. *Jones*, 4 N. Y., 503, 507; *Schmidt* v. *Blood*, 9 Wend., 268; *Stemmen* v. *Wilkins*, 7 Watts & Ser., 466; *Morgan* v. *Congdon*, 4 N. Y., 552; *Hale* v. *Barrett*, 26 Ill., 195; *Crawshay* v. *Homfray*, 4 B. & Ald., 50; *Kruger* v. *Wilcox*, Ambl., 252.) By the delivery of the two lots of malt to defendants plaintiff relinquished his lien, and thenceforth his claim was limited to his special contract with defendants. (*Cowell* v. *Simpson*, 16 Ves. Jr., 280; *Walker* v. *Birch*, 6 T. R., 258; *Bk. of Rochester* v. *Jones*, 4 N. Y., 497; *Holly* v. *Hungerford*, 8 Pick., 13; *Baker* v. *Fuller*, 21 id., 318; *King* v. *Indian Co.*, 11 Cush., 231; *Elliott* v. *Bradbury*, 23 Vt., 217.) The lien on defendants' malt furnished no consideration for any promise to pay for malting other barley. (*Leonard* v. *Vredenburg*, 8 J. R., 29; *Danforth* v. *Pratt*, 42 Me., 50; *Mallory* v. *Gillett*, 21 N. Y., 412, 414.)

*Frank D. Harmon*, for respondent. Where the language of a promissor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to

suppose it was understood by the promisee. (*Hoffman* v. *Ætna F. Ins. Co.*, 32 N. Y., 413; *Johnson* v. *Hathorn*, 42 id., 132; *Barlow* v. *Scott*, 24 id., 40; *Mowatt* v. *Ld. Londonsborough*, 3 El. & Bl., 334; *Potter* v. *Ont. Ins. Co.*, 5 Hill, 144.)

ALLEN, J.   It is very doubtful whether the exceptions to the rulings and decisions of the court upon the trial, and in the submission of the case to the jury were so taken as to present any question for review upon this appeal.   But without considering the sufficiency of the exceptions, we will examine the merits of the case so far as necessary to give judgment, as if the questions we consider were before us. The plaintiff, upon the assurance that Gordon & Son would furnish for malting 20,000 bushels of barley, agreed to malt the same at a reduced price, and the several parcels or lots of barley were delivered to be malted, under that agreement. A part of the malt was delivered to Gordon & Son, who made a payment of $1,000 on the general account, and not for the malting of any specific parcel.   It did not pay the charges on all the malt delivered to them.

As between the plaintiff and Gordon & Son, a claim by the former of a lien upon the malt remaining in his possession for the balance due him for malting and storing the entire quantity of barley would have been, at least, plausible.   The plaintiff would have had a colorable claim to his lien for a general balance, and it is not necessary to determine whether it would have been certainly sustained at law.   (*McFarland* v. *Wheeler*, 26 Wend., 467.)   The same claim and color of title would have attached to the malt upon its sale to a stranger while in possession of the plaintiff, except the transfer had been effected by an indorsement of a negotiable warehouse or storage receipt, and in that case whatever rights or equities, by way of lien or otherwise, the plaintiff had to the barley or its products, would have continued, except as against an indorsee in good faith and for value.   The *bona fides* and consideration of any such transfer, if challenged, would be the subject of investigation.

Negotiable warehouse receipts were issued to Gordon & Son by the plaintiff for two lots or parcels of the barley to be manufactured into malt, and the product thereof " deliverable to their order, on payment of the charges accrued thereon." Upon the negotiation and indorsement for value of these receipts to a third person having no notice of any general lien, the indorsee would doubtless acquire a valid title to the malt, subject only to the payment of the charges thereon. The malt in the hands of an innocent indorsee of the receipts for value would have been severed from the residue of the malt, and discharged of any general lien. The defendants became the indorsees of these two receipts, not upon a purchase of the barley or the product, but as I infer either as pledgees or as factors of Gordon & Son for sale, and made an advance to Gordon & Son upon them, and as one of the defendants testified, to the full value, and what proved to be afterwards more than the value. I do not understand that the defendants became the owners of the property but they were, nevertheless transferees for value to the amount of their advances, and had all the rights of purchasers to that extent. The amount of the advances does not appear, and it does not appear that the plaintiff at any time had notice of the amount, or of the particular relations between Gordon & Son and the defendants. He was told by Gordon that the defendants would pay the balance due upon the account for malting all the barley, and the defendants by their actions gave color to the truth of this statement.

After the failure in business of Gordon & Son, and when the defendants sought to remove the malt, the plaintiff aserted a lien upon all the malt then in his possession, including the product of the barley mentioned in the two receipts for the general balance due him, and the defendants had knowledge of the claim, and that the plaintiff refused to deliver any part of the malt, except upon the payment of that balance, or the assumption thereof by the defendants. All the negotiations, correspondence, and promises were had and made upon the basis of this claim, and with reference to

it, and all acts and declarations of the parties must be interpreted in view of the claim as made, and the relation of the parties in respect to it.

When the defendants sent to sample the malt they also requested a statement of the charges on each of the parcels or lots of barley specified in the receipts held by them, and a memorandum of the amount was given them in pencil, the plaintiff's clerk at the same time saying to the defendants' messenger that, although that was the amount of the charges on those two lots, the plaintiff held the malt subject to additional charges, and this was communicated to the defendants, with the amount of the additional claim, as is proved by Mr. Husted, one of the defendants.　Subsquently the measurer, sent by the defendants with an order for the delivery of the malt, was told that it could not be delivered until the plaintiff had some guarantee from the defendants that they would pay the charges, and the claim was specifically made by a letter from the plaintiff to the defendants of the 28th June, 1873, stating that he was ready to deliver the malt, but would like to have the storehouse receipts returned, and to "know that you (the defendants) guarantee the claim I have against the malt."　The defendants could not have understood this as meaning anything less than the balance due for malting all the barley of Gordon & Son.　This had been the claim distinctly made and assigned, as the reason for non-delivery, until the assurance was given.　The defendants had made advances on the barley mentioned in the receipts, subject to the charges thereon, and would have been liable for such charges without an express promise.　The defendants knew that the plaintiff's only purpose in withholding the delivery was in respect to charges for malting barley other than that covered by the receipts.　To this the defendants replied, in writing, the same day, returning the receipt for the parcel then called for, and saying, "of course, we consider ourselves bound for the payment of the charges on this malt."　The answer was equivocal; but the plaintiff had reason to believe that the defendants complied with his

demand, and that the promise was as broad as his claim. "This barley" may be construed as restricted to the barley mentioned in the particular receipt returned; but it is capable of being understood in a more enlarged sense, and as covering all the barley malted for Gordon & Son, and for which the plaintiff claimed a lien on the malt still in his possession; and such should be its meaning when viewed in the light of the circumstances, and in connection with the note to which it was a reply. It was so understood and acted upon by the plaintiff, and the defendants intended that it should be so understood. Up to this time there had been no denial by the defendants of the lien of the plaintiff, as claimed, or their liability to pay the full claim, and when this reply, assenting as "of course," to the requirements of the plaintiff was received, it would have been an imputation upon the good faith of the defendants had the plaintiff criticised the phraseology of the informal note, and required a more formal or technical acknowledgment. If the words of the promise may have been used in an enlarged or restricted sense, they will, in the absence of circumstances calling for a different interpretation, be construed in the sense most beneficial to the promisee. (*Hoffman* v. *Ætna Fire Ins. Co.*, 32 N. Y., 405.)

The rule in ethics is, that "when the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it," and this is the established rule at law, as well as in morals. In the language of the books, it is to be interpeted in the sense in which the promisor had reason to suppose it was understood by the promisee. (*Hoffman* v. *Ætna F. Ins. Co.*, *supra*; *Johnson* v. *Hathorn*, 2 Abb. Ct. of App. Dec., 465; *Barlow* v. *Scott*, 24 N. Y., 40; *Mowatt* v. *Lord Londesborough*, 3 E. & B., 307; *Potter* v. *Ontario Ins. Co.*, 5 Hill, 147.) Perhaps it would have been within the province of the court to have interpreted the letter of the defendants in the light of surrounding circumstances, and the application of the rule

quoted, if the only proof of the undertaking had been the letter. The defendants knew what the plaintiff required as a condition of the delivery of the malt, and they gave him reason to understand that they complied with the condition, and the letter is capable of an interpretation which would give it the effect claimed.

In *Mowatt* v. *Londesborough* (*supra*) a like question was reserved and decided by the court ; but the reservation was with liberty to the court to draw such inferences as the jury might draw. As a rule, the interpretation of written instruments is with the court as a question of law ; but when the interpetation depends upon the sense in which words are used, or the sense in which the promisor had reason to believe the promisee understood them, a fact to be determined from the relation of the parties and the surrounding circumstances, it would seem that it becomes a mixed question of law and fact. It is not, then, a matter of interpretation merely, but the ascertainment of the minds and intents of the parties. But if this be not so, the reliance of the plaintiff was not wholly upon the letter of the defendants, but was in part upon the acts and parol declarations of the defendants, which, if they did not of themselves fully prove a promise, enabled the jury to determine the sense in which the plaintiff had a right to receive the written promise, and that in which the defendants intended he should receive it and to infer a promise from all the evidence. The witnesses for the respective parties disagreed as to the interviews between the plaintiff's agent and one of the defendants after the delivery of the malt, and if the jury took the statement of the witnesses for the plaintiff as they might do, fortified as it was, to some extent, by the circumstances and probabilities of the case, then a promise might have been found independent of the letter of the twenty-eighth of June. The acts and declarations of the defendant, as proved by the witness Van Vliet, were certainly more consistent with the prior interview and dealings of the parties, and more ingenuous than as stated by the adverse

witnesses, and it was for the jury to determine where the truth lay.

The question, whether a promise was in fact made by the defendants, was fairly and properly submitted to the jury with a full explanation of the law bearing upon the question as presented. There was, in truth, no request to the court to interpret the letter or decide whether a promise was in fact made as claimed by the plaintiff, and no exception to the submission of the question to the jury, and if there had been, it would have been of no avail.

There is no claim, nor is it sought to be sustained here, on the ground that the defendants, by their acceptance of the malt, independent of an express promise, were liable. If the plaintiff's lien was, as claimed in his behalf, the unconditional delivery of the malt would have been a waiver of the lien, and the defendants would only have been held for the charges on the malt delivered to them under the receipts. The plaintiff's reliance is on the promise.

Whether there was or was not a consideration for the promise is not before us upon any proper exception. As one of six propositions, submitted after the charge had been given to the jury, the defendants' counsel asked the learned judge to charge that any promise to pay the debt of Gordon & Son, founded only on delivery of the defendants' malt, would be without consideration and therefore void, to which no response was made so far as appears, and an exception was taken to the failure to charge in "exact accordance with the requests." The disposition of the requests should appear by the record, and under so general an exception, every part of each and every proposition must have been such that the defendants were entitled to the instructions prayed in order to sustain the exception; that is, the exception must have been well taken to every part of the instructions asked, which cannot be said of this exception.

Again, the request was very limited in the statement of the supposed consideration for the defendants' undertaking. But, waiving the further consideration of these technical

objections to the form and matter of the exception, we are of the opinion that a good consideration for the promise may be found in the evidence, which, if credited by the jury, may sustain the promise.

The plaintiff was asserting a lien which would have been good against Gordon & Son, and for a debt which that firm said the defendants would pay. The defendants, by not objecting to the payment, or insisting upon their exemption from liability, or upon a delivery of the malt which they claimed under their receipts, upon payment only of the charges against it, conceded the lien of the plaintiff, and their liability to pay the charges claimed, to entitle them to any part of the malt. Whatever claim of title they had adverse to the lien of the plaintiff they expressly waived, and assumed Gordon's place, and induced the plaintiff to deliver the barley in reliance upon this waiver and this assumption of liability. By this waiver and action, they should be bound. They were not the absolute owners of the malt, and their only claim to it was to the amount of the advances as against the plaintiff; and, if these advances were not to the full value, Gordon & Son were, as general owners, entitled to the balance. In addition to this, there was evidence that malt in addition to that, the product of the barley mentioned in the receipts, was delivered to the defendants on the faith of their promise. Had the question been properly and distinctly raised, it would have been for the jury to pass upon the *bona fides* of the defendants' title to any part of the malt, the amount of their advances upon the faith of the receipts, and what malt was in fact delivered to them upon the strength of their promise. We cannot say that the claim of the plaintiff to a lien for his balance was entirely without foundation, so that it could not serve as a consideration for the promise alleged. It is not necessary to uphold a promise based upon the surrender or composition and compromise of a claim that it was a valid claim, one that could be enforced at law. A promise made upon a settlement of disputes, and to prevent litigation, is made upon a good consideration. The settle-

ment of a doubtful claim will uphold a promise to pay a stipulated sum, or do any other lawful act. In *Richardson* v. *Mellish* (2 Bing., 229) the chief justice said : " It is not necessary that the party should have a right to hold, if it be doubtful whether he has a right to hold, that is a good consideration," and Mr. Chitty, in his work on contracts, says : " And there can be no doubt that the resignation of a colorable claim conflicting with that of another person, and the settlement of a dispute between the parties, without suit, constitute a good consideration ; " and to this he cites *Thornton* v. *Fairlie* (2 Moore, 397), and *Cann* v. *Cann* (1 Atk., 10; 1 Vern., 4; Chitty on Cont., 45). A promise to pay a certain sum in settlement of a suit for slander, when the words were not actionable, was sustained, as made upon a sufficient consideration. (*O'Keson* v. *Barclay*, 2 Penn., 531.) And see, per GIBSON, J., *Hoge* v. *Hoge* (1 Watts, 216, 217). This is a very peculiar case. The claim of the plaintiff was not disputed. The defendants conceded the right of the plaintiff to retain the malt for his general balance, and admitted their liability to pay it, and they did this, claiming only a lien for their advances upon the malt, subject to the plaintiff's prior lien, and thus representing the general owner of the property, and it would be unconscionable, if the objection of a want of consideration for a promise made under such circumstances should prevail. By their concessions, as well as by their express promise, they put the plaintiff at his ease, and induced him to deliver to them all the malt in his possession, made from barley received from Gordon & Son. Having a transfer of Gordon's property as security for advances upon it, they voluntarily took their place and assumed their liability to the plaintiff ; and, by so doing, received the full benefit of their lien and a delivery of the barley.

I am of the opinion that the promise was made upon a new and independent consideration, and is valid, and that the judgment should be affirmed.

All concur.

Judgment affirmed.