Smith, P. J.
Action upon a promissory note purporting to have been made by the defendant, for $Y92.20, dated June 5, 1882, and payable to the plaintiff or bearer, one day after date, with interest. The order granting the new *708 trial recites that the motion was made upon the ground that the verdict was contrary to the evidence and contrary to law.
The execution and delivery of the note or instrument in writing described in the complaint were admitted by the answer, but matter was set up in avoidance thereof which will be more particularly referred to hereafter The note having been read in evidence, the defendant took' the case and called as witnesses, Catharine Downey, his wife; himself, and Emma Downey, his daughter. In order to appreciate the bearing of their testimony, it will be useful to state the theory of the plaintiff in regard to the consideration of the note and the circumstances under which it was executed, as developed by the printed case.
The plaintiff is a brother of the defendant’s wife. In 1855, or thereabouts, he went to California, where he remained until shortly before the date of the note in suit, returning only once or twice, for a few days, in the meantime. While there, he sent money to his mother, Mary Carney, in Erie county, to be invested for his use. She lent portions of it to several of her children, of whom there were nine in all, including the defendant’s wife. The mother died in April, 1882, and the plaintiff returned to Erie county soon after. On the 5th of June, 1882, the day of the date of the note, there was a family meeting at the house of the defendant. The plaintiff’s testimony was to the effect that the meeting was at his instance for the purpose of settling with the different members of the family in respect to the money they had had of him through their mother.
Catharine Downey, the defendant’s wife, testified in substance to the meeting at her house on the day in question; that Timothy Murphy, Andrus McNealy, Michael Carney, Daniel Carney, Timothy Carney, Margaret Downey, John Downey, Luckey Carney, John Carney, and two of witness’ children, Ida and Emma, were there; that she didn’t know how they came to meet there; that she didn’t know they were coming before they made then appearance; that they began coming about eleven o’clock, and took dinner at her house; that she heard nothing said about money, debts or claims; that towards evening they said they wanted her husband to sign a paper to show them that he was not owing them; that her husband then signed a paper; and that neither the plaintiff nor any of them asked her if she had any money from her mother. She also testified that she never had any dealings with the plaintiff, and owed him nothing; that she did not owe her mother or her estate when she died; and that her husband had no dealings with the plaintiff, *709 nor did he owe her mother or her estate to witness’ knowledge.
The defendant testified substantially the same as his wife. The daughter Emma testified that she was teaching school on the day referred to by the previous witnesses; that she remembered the meeting at their house; she got home after four o’clock, saw John Carney, John Downey, Margaret Downey, Andrus McNealy, David Carney, Timothy Carney and her sister Ida there; that she was not in the room when her father signed the paper; but that she heard McNealy say, “sign this paper, it is not anything you will have to pay; ” that she saw a paper, but left the room before it was signed.
The defendant then rested.
On the part of the plaintiff, Andrus McNealy was sworn. He was a cousin of the Carneys, and executor of Mary Carney’s will. He testified, in substance, that they reached defendant’s house about 9:30 o’clock in the evening; that after they all assembled plaintiff told them he was there for the purpose of settling with them, and for each of them to make a settlement or give in what they had of his money, of his mother; that they began with Mrs. Downey, the defendant’s wife; that witness, defendant and his wife sat at a table; that witness brought some paper with him, and defendant had a little book that he figured on; that they talked over the amount defendant’s wife had had; that she said that David said that she had had $400, but she didn’t think she had quite that amount, but David knew, and if he said so she would call it that; there was some dispute as to the time she had it; she claimed she had paid $200 for Tim. Carney, which Tim. admitted was so; and the amount was finally figured and agreed on at the amount of the note in suit; that defendant was there all the time; that they figured up with each of the parties; that witness drew a note for each to sign, after he got through figuring; that he said to defendant he had made out a note for his amount, and read it to him and asked him if it was right; that defendant looked at it and said he supposed it was right, and sat down and signed it.
John Downey, a brother of the defendant, and brother-in-law of the plaintiff, testified substantially the same as McNealy, as did also his wife, Margaret Downey; also, Michael S. Carney, a nephew of the plaintiff, and Mrs. Downey, who testified that he assisted in the figuring to ascertain the amount owing by each; and lastly, the plaintiff himself testified substantially the same. Each of the last three witnesses also testified that they heard nothing said to the effect that defendant was to sign the paper to show that he didn’t owe the plaintiff anything, or that he *710 would not have to pay anything i£ he signed the paper. William Hamahan testified to declarations made by defendant’s wife in August, 1882, to the effect that McNealy held a note against them given on a settlement at her house, which she was going to pay.
The matters in avoidance set up in the answer are that' the note was without consideration, and that at the time of giving the note it was falsely represented to defendant by plaintiff and others that said instrument was merely a statement of moneys which plaintiff claimed defendant’s wife had received from her mother, and no note or obligation for the payment of money, and defendant so understood and believed, and that defendant owed plaintiff nothing.
The answer does not allege that the defendant was told that the paper he signed was to show that he did not owe the plaintiff anything, or that he signed it supposing or believing that such was its purport. The testimony that he was so told and that he signed believing that was the nature of the paper is hardly probable. Such a transaction would have been unusual, not to say absurd. The. defendant testified that he could read and write and, for aught that appears, he had full opportunity to read what he signed. The entire transaction as stated by the defendant and his wife, to wit, that the family met at defendant’s house without previous notice to himself or his wife and remained there all day for no apparent object, and that at the close of the day, without anything having been said about money, debts or claims, the plaintiff or McNealy drew up a paper and asked defendant to sign it, to show that he did not owe the plaintiff anything is so improbable that their version should not prevail over the more probable version of the plaintiff and his witnesses and the evidence furnished by the note itself. The testimony of the defendant and his wife, so far as it is designed to convey the impression that nothing was said about money, debts or claims, is at variance with the allegation in defendant’s verified answer that at the time of giving the note, the plaintiff and others represented to defendant that the instrument was merely a statement of moneys which plaintiff claimed defendant’s wife had received from her mother.
As to the defense of a want of consideration, the testimony, warranted the finding that the defendant gave his note at the request of his wife, in settlement and compromise of his claim made by the plaintiff for money lent to her by him through her mother. The claim was a good and sufficient consideration for the compromise, whether or not it might have been successfully defended against, as suggested by the defendant’s counsel, on the ground that it *711 was barred by the statute of limitations, or on the ground that the claim belonged to the estate of his mother, and not to the plaintiff. The plaintiff claimed the money lent was his, and the defendant and his wife, and also the executor of the mother’s estate, acquiesced in the claim, and it was settled on that basis. The settlement foreclosed those questions, as between the parties. White v. Hoyt, 73 N. Y., 514; Dunham v. Griswold, 100 id., 224.
We are not prepared to say that the learned judge who presided at the trial, and saw and heard the witnesses, erred in holding that the verdict is against the weight of evidence.
We are also of the opinion that it was error to admit evidence that Mary Carney, the plaintiff’s mother, made a written statement shortly before her death, that of the money left in her hands by the plaintiff at his departure for California, she loaned to the defendant through her son, David Carney, somewhere about the sum of $150, for which he gave his note, which was then held for her by Catharine Downey, her daughter. The naked declaration of the mother, whether written or oral, was not evidence against the plaintiff for any purpose. It was received against the objection of the plaintiff’s counsel, and was submitted to the jury as bearing upon the good faith of the transaction of the 5th of June, 1882. We are not able to see that it had any legitimate bearing on that transaction, ■and as it is impossible to say that it did not influence the verdict, its reception was error.
The plaintiff being entitled to a new trial on the ground of the improper reception of evidence, as well as for the reason that the verdict is against the weight of evidence, the costs are properly made to abide the event.
The order should be affirmed.
All concur.