I think it could not be said that there was such waiver as matter of law. "The superior officer" of the relator, vested with the power of removal, was the board of elections, composed of four members. Section 11, subd. 2h, c. 909, of the Laws of 1896, as amended by Laws 1901, p. 243, c. 95. The jury could have found that only the individual who was president of the board sought to obtain the resignation of the relator. At that time he avowedly had no authority from the board even to ask for a resignation. He did not pretend that the board contemplated a removal as the alternative. He did not assert that there was any ground of removal. On the contrary, he gave as reasons for resignation matters which were entirely extraneous to any shortcomings of the relator. The relator testifies that the president of the board expressly excluded the board itself, saying that it had nothing to do with the case. Incident to the individual was his potentiality as an official. Even if that individual did say that if the relator would not resign he would be removed, it could be inferred that the relator might understand such utterance but as the expression of intention to persuade the board to remove him. But, even so, that was far from the expressed intention of the superior officer to proceed to a removal. Moreover, the relator did not stand mute. He asserted that he would not resign, and that he could not be removed, except upon written charges and a hearing before the board. This was an explicit statement of his rights. True, he did not specify that his protection was by virtue of his status as a veteran fireman, nor did he cite the statute; but we are now considering the evidence of a waiver, not of the sufficiency of a notice. Although the question of waiver may be disposed of as a matter of law (Ocumpaugh v. Engel, 121 App. Div. 9, 105 N. Y. Supp. 510), yet, when different inferences are permissible, the question is one of fact (Sheehan v. Board of Education, 120 App. Div. 557, 104 N. Y. Supp. 1002; Fox v. Harding, 7 Cush. [Mass.] 516–520).

I advise that the order of the Special Term be reversed, and the order of the Trial Term be modified, so as to provide for a new trial, and, as so modified, it be affirmed, all without costs. All concur.

---

STANTON v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

1. CORPORATIONS (§ 515*)—CONTRACT—DEFENSE OF ULTRA VIRES—NECESSITY OF PLEADING.

The defense of ultra vires, to be available in an action for breach of contract, must be pleaded.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2082–2084; Dec. Dig. § 515.*]

2. MASTER AND SERVANT (§ 3*)—CONTRACT OF EMPLOYMENT—REASONABLENESS.

A contract of a railroad company with an employé, that in consideration of the latter's dismissal of an action against the company for negligent injuries it would employ him as an engineer as soon as he became able and competent to discharge the duties of that position and as soon as there was a vacancy, such employment to continue while there was work of that

character, subject to the right of the company to discharge him for failure of duty or misconduct, is not void as unreasonable.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 3.*]

3. CONTRACTS (§ 155*)—CONSTRUCTION AGAINST PROMISOR.

Where the language of a contract may be understood in more than one sense, it should be interpreted in the sense in which the promisor had reason to believe the promisee would understand it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. § 155.*]

4. MASTER AND SERVANT (§ 3*)—AGREEMENT TO HIRE INJURED EMPLOYÉ—CONSTRUCTION.

A railroad company agreed with an employé, who had been seriously injured while employed as fireman, in consideration for a release of his further claim for damages, to give him employment as engineer, when he became "physically able and otherwise competent to discharge the duties of that position, and as soon thereafter as there is a vacancy," such employment to continue while the company has work of that character, subject to the right of the company to discharge him for failure of duty or misconduct. Held, that the only condition of the employé's employment as engineer was his ability to perform the duties and the occurrence of a vacancy, and it was not subject to any rules of the company in connection with its agreement with its employés' brotherhoods, providing a system of promotion of firemen to engineers in regular order from a list made up on the basis of fitness, record, and long service.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 3.*]

5. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—SUBMISSION OF ISSUES.

The error of submitting to the jury the construction of a contract is harmless, unless it is shown that the jury erred in the construction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

6. MASTER AND SERVANT (§ 40*) — CONTRACT OF EMPLOYMENT — BREACH — EVIDENCE.

In an action for breach of a contract to employ plaintiff as locomotive engineer as soon as a vacancy occurred and he was able to take the position, evidence held to show that a vacancy which plaintiff could have filled occurred.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 40.*]

Appeal from Trial Term, Orange County.

Action by John A. Stanton against the Erie Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

Henry Bacon, for appellant.

Rosslyn M. Cox (Abram F. Servin, on the brief), for respondent.

JENKS, J. This action is for breach of contract. The plaintiff, when a locomotive fireman in the employ of the defendant, was injured, and brought an action for negligence against the defendant. On April 1, 1904, the defendant delivered to the plaintiff the following writing:

"Erie Railroad Company. Office of the General Manager, No. 21 Cortlandt Street, New York, April 1, 1904. Mr. John A. Stanton, Port Jervis, N. Y.—Dear Sir: In consideration of your withdrawing your action against this company and your claim growing out of an accident to you on June 17, 1903, up-

on the payment to you of the sum of $5,000 cash, the Erie Railroad will give you employment as engineer when you become physically able and are otherwise competent and qualified to discharge the duties of that position as required, and as soon thereafter as there is a vacancy, and such employment shall continue while the company has work of that character to perform and so long as you remain physically able, competent, and otherwise qualified to perform such duties, subject to the right of the company to discharge you for failure to faithfully perform such duties, to comply with its rules and regulations, or for other misconduct. Yours truly, J. C. Stuart, General Manager."

A general release was executed by the plaintiff, and the $5,000 was paid to him. The plaintiff now complains that on June 29, 1904, when he was qualified as a locomotive engineer, there was a vacancy, but that the defendant, although requested, neglected and refused to provide him with such employment, and continued in such refusal thereafter, although there were numerous vacancies. The defense was a general denial. The plaintiff gained a verdict of $4,500, which was at the rate of $4 a day for 1,125 days.

The defendant appellant raises several points. The question whether the contract was ultra vires was not raised by the pleadings, and therefore is not available. Keating v. American Brewing Co., 62 App. Div. 501, 71 N. Y. Supp. 95; Richmond Co. Soc. P. C. C. v. City of New York, 73 App. Div. 607, 77 N. Y. Supp. 41. I think, however, that the contract may be sustained under our judgment in Usher v. N. Y. Central & Hudson River Railroad Co., 76 App. Div. 422, 78 N. Y. Supp. 508; affirmed 179 N. Y. 544, 71 N. E. 1141.

The defendant contends that it has fulfilled its contract. It had a system of employment for firemen and engineers, formulated in certain rules and regulations of agreement with the Brotherhood of Locomotive Engineers and the Brotherhood of Locomotive Firemen. This system contemplated promotion of firemen to engineers in regular order from a list made up upon the basis of fitness, record, and long service. Under it, firemen were advanced to engineers, engineers were assigned to duty according to seniority, and from time to time advancements of firemen were made temporarily and reductions of some engineers were made temporarily, according to the volume of the defendant's business. The plaintiff was a member of the Brotherhood of Locomotive Firemen, and knew of this system and of the agreements. The defendant shows that plaintiff was put upon the roll of engineers, but under its system there had not been during the period in question a vacancy in which he could be employed. This contention is necessarily based upon the proposition that the defendant only undertook to place the plaintiff on its roll as an engineer, but that his employment as an engineer, whereby he gained his pay, was subject to the same rules, regulations, and conditions as regulated that of other engineers. In fine, only the status of engineer on the defendant's roster was assured by this contract. But the obligation of the contract is absolute, save with the expressed conditions that the plaintiff shall become physically able and otherwise competent and qualified. These conditions accentuate the absolute undertaking, in that exceptions prove the rule.

If the defendant intended by this agreement that the plaintiff should simply have a rating as an engineer, with employment as such afforded

only by said system, rules, regulations, and agreements, it could readily have used apt words of expression. But it did not. On the contrary, its expression is, not only that the plaintiff would have a vacancy as soon as it occurred, but also that such employment would continue while there was work of such character to be done, subject only to discharge for misconduct. I think that the plaintiff could thus understand the agreement as complete in itself. The transaction was not an ordinary hiring, which involved merely the question of wages for work, so that it was reasonable that the servant would infer that he was subject to the general system which regulated the service of his fellows; but the contract of employment was extraordinary, made in part consideration of the servant's release of a claim against the defendant. Moreover, can it not be said that the very agreement itself, even as the defendant would interpret it, is a departure from its system, inasmuch as it affords to one not then an engineer, but at best a former fireman, a place on its roll of engineers, irrespective of his eligibility under its system? I think that the jury did not err because it practically found that the defendant obliged itself to employ plaintiff whenever there was a vacancy, and to continue him in such employment while there was work for an engineer and he demeaned himself well. Jones on the Construction of Contracts well says:

"It may also be said that it is reasonable and just to conclude that where one of the parties to a contract, in describing his own obligations, uses language susceptible of more than one interpretation, the person with whom he is contracting will undertsand this language in the sense which is most favorable to his own interests. And it is proper that the one who occasions such misunderstanding should bear the consequences which flow from it."

And also quotes from 2 Kent's Commentaries, p. 557, as follows:

"The true principle of sound ethics is to give the contract the sense in which the person making the promise believed the other party to have accepted it. * * * The modern and more reasonable practice is to give the language its just sense, and to search for the precise meaning, and one requisite to give fair effect to the contract, without adopting either the rule of a rigid or of an indulgent construction."

While the rule of contra proferentem is often said to be one of last resort, yet it is well settled:

"If the language of a promise may be understood in more senses than one, it is to be interpreted in the sense in which the promisor had reason to believe it was understood."

See Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292.

This rule is taken from White v. Hoyt, 73 N. Y. 505, 511, which in turn rests upon Hoffman v. Ætna Fire Ins. Co., 32 N. Y. 405, 88 Am. Dec. 337, citing, among other cases, Potter v. Ontario & L. M. Ins. Co., 5 Hill, 149, when the court, per Bronson, J., applied Dr. Paley's rule in relation to the performance of contracts:

"Where the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it."

Of course, the question is, not what the promissor had in mind at the time, but what he had reason to believe that the promisee would gather from his expression.

"The mere impression or understanding of one of the parties, not communicated to the other, can never justify the inference that the understanding of the other party was the same; and in order to constitute a contract or agreement the assent of both parties is requisite." Murray v. Bethune, 1 Wend. 196.

Jones, supra, also writes:

"And the 'obligee should have the right to require of the obligor all that a right and natural interpretation of the signs made use of would give him.'"

Citing from Lieber's Hermeneutics, p. 85, note 5:

"It is the intention of the party that binds him; but what that intention was is to be learned, not from his own assertion or understanding of it, but from words or signs in which it has been clothed."

But it is contended that the court erred in submission of the contract to the jury for its interpretation. Even if this were error, it would not call for reversal, unless the jury erred. Jones v. DeCoursey, 12 App. Div. 172, 42 N. Y. Supp. 578, and cases cited, affirmed 161 N. Y. 627, 55 N. E. 1096. But I am inclined to think this case is of the class described by Allen, J., writing for the court in White v. Hoyt, supra, where he said that, while it is true that the construction of contracts is usually the function of the court, and not the jury, yet this is not the invariable rule, and then said:

"When the interpretation depends upon the sense in which words are used, or the sense in which the promisor had reason to believe the promisee understood them, a fact to be determined from the relation of the parties and the surrounding circumstances, it would seem that it becomes a mixed question of law and fact. It is not, then, a matter of interpretation merely, but the ascertainment of the minds and intents of the parties."

It is further contended that there was not proof of any vacancy which the plaintiff could have filled during the period covered by the complaint. The defendant's road foreman, Salley, did testify that prior to November 13, 1905, and after the plaintiff had passed the examination, there had been no appointments made to the engineers from the firemen sufficient to reach the plaintiff's name—no men moved up.

"Between these dates there had been no vacancy in the engineers that he could get, no vacancy to which these firemen could be moved up."

And he further testifies:

"The paper which you hand me, which I gave you this morning, shows, as per your request, the engineers that left the service of the Erie Railroad Company from any cause from June 1, 1904, to January 1, 1905, on the New York division. Their going did not exactly leave a vacancy in their positions. It did not make a vacancy, as there was still enough men on the list to take care of the business. I did not necessarily have to take some other men to put in their place. There were men enough on the engineers' list to take care of the business. Col. Quick, when he left his position, was known as an extra engineer. I consider there was no vacancy. When Col. Quick left the employment of our company on December 20, 1904, I do not consider that position that he left was vacant and we put some other man in.

"By the Court: Q. When he went away there was a place vacant? A. Well, of course, there was' a vacancy; one man less. Q. There was a vacancy open for somebody to fill? A. Yes.

"I have seen the word 'vacancy' in this contract. I answered the questions just as directly as I can. J. S. Reeder left the employ of our company on September 6, 1904. There was a vacancy in his position when he left. These

several men on this list, when they left, that created a vacancy in their position."

On the other hand, the plaintiff testifies:

"There were engineers, after I made this contract, discharged, and other engineers employed, or firemen promoted. The wages of engineers was $4 on a freight engine."

It is also urged that the plaintiff did not furnish any report of his physical examination as instructed. But the plaintiff testifies that he never received any such letter of instruction from the company, and, on the other hand, it appears that the defendant did not urge this omission upon him, or call his attention to it, but, on the contrary, put him upon its roster as an engineer.

I advise affirmance of the judgment and order, with costs. All concur.