## McELRAEVY & HAUCK CO. v. ST. JOSEPH'S HOME FOR GIRLS
(two cases).

(Municipal Court of City of New York, Borough of Queens, Second District. July 30, 1913.)

1. CONTRACTS (§ 322*)—"PERFORMANCE" BY PLAINTIFF—BURDEN OF PROOF.
   "Performance" of a contract consists in doing the things agreed to be done, and the burden is on plaintiff to show performance, not on defendant to show nonperformance.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1768; Dec. Dig. § 322.*
   For other definitions, see Words and Phrases, vol. 6, p. 5295.]

2. CONTRACTS (§ 280*)—PERFORMANCE—SUFFICIENCY.
    A heating company contracted to install in defendant's premises a boiler of the capacity of 5,000 square feet of radiation, the boiler to be insurable. The boiler installed fell short one-third in capacity, and was not insurable. *Held*, in an action by the heating company on the contract, that there was no sufficient performance of the contract.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1249–1280; Dec. Dig. § 280.*]

3. CONTRACTS (§ 346*)—ACTION—NONPERFORMANCE—NECESSITY OF PLEADING.
    Defendant, in an action on a contract, may show plaintiff's failure to perform, without pleading it as a counterclaim.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1714, 1718–1751; Dec. Dig. § 346.*]

4. CONTRACTS (§ 319*)—ACTION—SUBSTANTIAL PERFORMANCE.
    For plaintiff to recover as for a substantial performance, it was incumbent on it to show the difference in value between the boiler installed and the boiler called for by the contract.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1458, 1476, 1477, 1479, 1493–1507; Dec. Dig. § 319.*]

5. CONTRACTS (§ 295*)—SUBSTANTIAL PERFORMANCE—HEATING CONTRACT.
    Where plaintiff contracted to install an insurable boiler of a specified capacity, and the boiler furnished was not insurable, and was. of only two-thirds the agreed capacity, there could be no recovery on the ground of substantial performance; such recovery being permitted only where the omissions are unsubstantial and such as the parties are presumed not to have had in contemplation when making the contract.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1353–1356, 1362; Dec. Dig. § 295.*]

6. SALES (§ 428*)— BREACH OF WARRANTY—REMEDIES OF BUYER.
    Where defendant refused to accept a boiler from a heating company because not in compliance with the contract, his remedy was not limited to an action for damages for breach of warranty.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1214–1223; Dec. Dig. § 428.*]

7. CONTRACTS (§ 155*)—CONSTRUCTION—CORRESPONDENCE.
    In construing correspondence evidencing a contract between plaintiff and defendant, it should be read together, and ambiguities and uncertainties should be construed most strongly against the writer.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. § 155.*]

8. CONTRACTS (§ 322*)—ACCEPTANCE OF PERFORMANCE—SUFFICIENCY OF EVIDENCE.
    Evidence, in an action by a heating company to recover under a contract for a boiler installed in defendant's premises, *held* to show that defendant did not accept the boiler.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1465, 1534;. Dec. Dig. § 322.*]

Two actions by the McElraevy & Hauck Company against the St. Joseph's Home For Girls. Judgments for defendant.

Maerkle, Darius & Maerkle, of New York City, for plaintiff.

Francis J. Hogan, of New York City (Anthony J. Ernest, of New York City, on the brief), for defendant.

CRAGEN, J.   These two actions, which were tried together, were brought to recover the sums of $300 and $370, respectively, and arise out of the following circumstances:

For a number of years prior to the year 1911, the defendant institution had in its Home at Flushing, L. I., two horizontal tubular boilers, used for heating the premises.   In August, 1911, the Allsop Heating Company, plaintiff's assignor, inspected the defendant's premises with a view of making repairs to said boilers, and after such inspection the said Heating Company wrote to the defendant, submitting a proposition as to the cost of such repairs, with an alternative proposition for the removal of the poorer one of said boilers and the installation of a new boiler, to be connected with the remaining old one, and advising the defendant that the alternative proposition was the most advisable one to accept.   This proposition, as far as material to a disposition of this action, is as follows:

"We will disconnect and remove one of the old horizontal tubular boilers now on premises, furnish and erect one Allsop 'Economy' water tube safety steam boiler of 5,000 square feet capacity, cross-connecting same with the better of the two old boilers, so that either one or both boilers can be used together or separately, with all necessary pipe and fittings, valves, gauge, damper regulator, fire tools, etc., complete, making repairs to the better one of the two horizontal tubular boilers as advised by the boiler inspector, all for net sum of thirteen hundred ($1,300) dollars."

This proposition was accepted by the defendant, and the Heating Company in the fall of 1911 removed one of the old boilers, and caused a boiler of the name and make contained in its proposition to be duly installed, which was connected with the old remaining boiler.   No mention is made in said proposition of securing insurance on the boiler, although the president of the Heating Company admitted on the stand that he had agreed to do so, and the fact that he did is borne out by his company's letter of March 9, 1912.   Subsequently the boiler was inspected by an inspector of the Fidelity & Casualty Company, and insurance refused, on the ground that the boiler was structurally defective.   Much controversy was then had, between the Heating Company and the defendant, regarding the boiler; the defendant contending that the boiler was not as represented, in that it failed to perform the work or the results expected of it, and was insufficient in capacity, which controversy resulted in the defendant refusing to accept the boiler.

In the discussion regarding the merits of the boiler, the Heating Company maintained that the difficulty, if any, was due to the defects in the main and return piping, and the fact that the boiler could not show good results by reason of its being connected with the old remaining boiler.   The controversy mentioned continued down to June, 1912, when the Heating Company submitted a further proposition to the defendant, for the removal of the remaining old and the installation of a second new boiler, and the erection of new piping, in place of what it contended was defective, for the sum of $1,107.   This proposition was also entertained by the defendant.   The evidence is not clear when the defendant made a payment on account, but in any event there was due $1,000 on the first contract when the second proposition

was submitted. Upon the acceptance of the second proposition, the Heating Company contends that it proceeded with the work, in the meantime having received the further sum of $700, which it credited on the first contract, leaving a balance of $300, to recover which the first action was brought.

The Heating Company never installed the second boiler, although it removed the second old one, and had the new one on the premises, preparatory to installation, when it contends the second contract was modified to the effect that it agreed to take back the second new boiler and cancel the second contract, in consideration of the defendant agreeing to pay the sum of $370, which the Heating Company claimed represented its outlay for material and labor to the date of cancellation, which sum is the subject of the second cause of action.

[1, 2] Considerable evidence was given on the trial as to the capacity of the boiler installed, with the usual conflicting opinion of experts. Suffice to say, however, the evidence established that the boiler falls far short of producing the guaranteed 5,000 square feet of radiation. The testimony of Mr. Peterson and Mr. Murdock, two of the experts, which I consider the most reliable on the subject of capacity, and both of whom arrive at practically the same conclusion, is to the effect that, working the boiler under the most favorable circumstances, it nevertheless falls short approximately one-third of the guaranteed heating capacity. By reference to the pleadings, it will be seen that the theory upon which the first cause of action is predicated is that the Heating Company performed its contract; otherwise speaking, the plaintiff, as the assignor of the Heating Company, alleges full performance of the contract on the part of the Heating Company, and not substantial performance. Can it be said, under the circumstances, that the contract was performed? I think not. The defendant was entitled to have a complete boiler placed upon its premises of the guaranteed capacity and of insurance thereon, as agreed. Performance of a contract consists in doing the thing agreed to be done, and the burden is on the plaintiff, suing upon a contract, to show performance, and not upon the defendant to show that the plaintiff has not performed. Vernon v. Vulcanite Portland Cement Co., 119 App. Div. 39, 103 N. Y. Supp. 876. As was said by the Court of Appeals in a very recent case (Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, at page 381, 101 N. E. 162, at page 163):

"The contract establishes and determines the rights and liabilities of the parties. Their agreements create the obligations they are bound to fulfill and the court to enforce and fix the scope and limits thereof. * * * It is a well-settled rule of law that a party must fulfill his contractual obligations. Fraud or mutual mistake, or the fraud of one party, and the mistake of the other, or an inadvertence induced by the one party and not negligence on the part of the other, may relieve from an expressed agreement, and an act of God or the law, or the interfering or preventive act of the other party, may free one from the performance of it; but if what is agreed to be done is possible and lawful, the obligation of performance must be met. Difficulty or improbability of accomplishing the stipulated undertaking will not avail the obligor. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse nonperformance. The courts will not consider the hardship or the expense or the loss to the one party, or the meagerness or the uselessness of the result to the other. They will neither

make nor modify contracts, nor dispense with their performance. When a party by his own contract creates a duty or charge upon himself, he is bound to a possible performance of it, because he promised it, and did not shield himself by proper conditions or qualifications."

[3, 4] Nor is it necessary for the defendant to plead a counterclaim to establish the fact of nonperformance. Ryan v. Brown (Sup.) 104 N. Y. Supp. 871. It is conceded that the Heating Company never secured insurance on the boiler, and, assuming that the plaintiff might be entitled to recover as and for substantial performance, it was incumbent upon it to show the difference between an insurable and insured boiler and one not insurable. This is likewise true regarding the heating capacity, although the difference between the guaranteed heating capacity and the radiation the boiler could produce is such that I doubt if the plaintiff could even recover on the theory of substantial performance. Spence v. Ham, 163 N. Y. 220, 57 N. E. 412, 51 L. R. A. 238; Carpenter v. Ellsworth, 151 App. Div. 532, 136 N. Y. Supp. 108.

[5] As will be seen by reference to the above cases, it is only where the things omitted are unsubstantial that a recovery is permitted; for instance, the Court of Appeals said in Van Clief v. Van Vechten, 130 N. Y. at 580, 29 N. E. at 1019:

"Substantial performance is not sufficient, except when it is understood as excluding only such unsubstantial differences as the parties are presumed not to have had in contemplation when they made the contract."

Applying this test to the failure to insure or procure insurance on the boiler, and the fact that the boiler fell short approximately of one-third of the guaranteed heating capacity, can it be said that the Heating Company even substantially performed its contract? These things the parties had in contemplation. They are things which the parties intended, and the plaintiff cannot recover for the failure of the Heating Company to furnish them.

[6] But the plaintiff contends that defendant's remedy is for damages on the breach of warranty. This would be true if the boiler was accepted, but the boiler was not accepted.

[7, 8] From an analysis of the correspondence, which should be read together (Eng. Company v. Herring-Hall-Marvin Safe Co., 76 Misc. Rep. 369, 134 N. Y. Supp. 810), and ambiguities and uncertainties in which should be construed most strongly against the writer (Staten I. Co. v. Spearin, 149 App. Div. 854, 134 N. Y. Supp. 98), it will be seen that the proposition of August 30, 1911, was to include repairs. Accompanying the proposition was a letter of even date, which should be construed as the defendant understood it (Stanton v. Erie R. Co., 131 App. Div. 879, 116 N. Y. Supp. 375), which is to the effect that the boiler would cost $1,000, and the $300 was for repairs. This is the $300 which the defendant paid to the Heating Company, and the only sum that had been paid to it, when the second proposition of June 21, 1912, was submitted. While it is true that the defendant was put to an election of either accepting or rejecting the boiler after reasonable examination, the fact that it had not been accepted or regarded as such by the Heating Company is borne out by

its correspondence of March 9, 1912, and June 21, 1912, which negatives any idea of acceptance.

This was the position of the parties in June, 1912, when the defendant advised the Heating Company of its intention to remove the boiler and substitute another of different make. Upon receipt of this information, the Heating Company wrote to the defendant, offering explanations respecting the defects complained of, and assuring the defendant that, after a second boiler of the same make and capacity was installed in place of the old remaining boiler, the difficulty would be obviated. This resulted in the acceptance of the second proposition above mentioned, after which the defendant paid the Heating Company $700, being the first two payments of $200 and $500, respectively, mentioned in the acceptance of July 31, 1912. These payments the Heating Company credited on the first boiler, which it *clearly had no right to do,* as the two accounts, as far as the method of payment was concerned, had then become merged (see letter of July 31, 1912), and it could only be credited accordingly; i. e., to the whole then contractual indebtedness of $2,170. In any event, such payment could not operate as an acceptance of the first boiler, as the defendant's letter of July 31, 1912, must be read in connection with the Heating Company's proposition of June 21, 1912, and the correspondence connected therewith, and as the defendant understood it (Stanton v. Erie R. Company, supra), viz., that the first boiler was to produce the guaranteed capacity when the second boiler was installed and connected with it, evidencing the intention of postponing the acceptance until then. See, also, letter of July 18, 1912, wherein it is expressly stated the contract price of the first and second boiler ($2,000) was not to become due until the completion of this contract. What contract? The contract of installing the second boiler.

The fact that the second contract was modified as claimed by plaintiff is denied by defendant, and is highly improbable to say the least. The effect would be to release the Heating Company of performance of its prior contract, while the defendant would be required to pay in full for what work the Heating Company claims it did in the performance of the second contract.

It follows from the above that judgment should be rendered for the defendant on the merits in both actions; and, as no affirmative judgment can be rendered against the plaintiff on the counterclaims interposed, the same are hereby dismissed without prejudice.