422 Levy *v.* Cleveland, Cincinnati, Chicago & St. L. R. Co.

First Department, October, 1924. [Vol. 210

to sever the tender, reject what was non-tenderable and take what was due, and accordingly the complaint shows no breach of contractual duty by defendant.

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion to dismiss the complaint granted, with ten dollars costs, with leave to the plaintiff to serve an amended complaint on payment of said costs.

Clarke, P. J., Merrell, Finch and Martin, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to plaintiff to serve an amended complaint within twenty days from service of order upon payment of said costs.

---

Leo Levy, Respondent, *v.* The Cleveland, Cincinnati, Chicago and St. Louis Railway Company, Appellant.

First Department, October 31, 1924.

Contracts — action to recover amount due on coupons of bonds issued by defendant — bonds were issued in France and were in French language — bonds and coupons were made payable in francs in Paris, France, or at option of bearer at certain banks in Belgium and Switzerland — principal and interest were payable without deduction for United States taxes or French duties and taxes — coupons presented in Switzerland are payable in French francs and not Swiss francs.

Coupons of bonds, which were issued by the defendant company in France and written in the French language, are payable in French francs, since it appears that the bonds provided for the payment of principal and interest in francs at Paris, France, or at the option of the bearer at certain banks in Belgium and Switzerland, without deduction for taxes laid in the United States or without deduction for French duties or taxes resulting from the laws of the French Republic in force on May 1, 1910. The plaintiff was not, therefore, entitled to demand the payment, in Swiss francs, of the coupons which he presented to a designated bank in Switzerland.

The terms of the promise contained in the bonds admit of more senses than one, and that being the case, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it. Upon all the evidence, as well as upon the face of the bonds and coupons, it is apparent that the defendant understood and that it believed that its obligee would understand, that the bond was a French contract dealing with French currency.

Martin, J., dissents.

Appeal by the defendant, The Cleveland, Cincinnati, Chicago and St. Louis Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of November, 1923, upon

the decision of the court rendered after a trial before the court a jury having been waived.

*Stetson, Jennings, Russell & Davis* [*Nathan L. Miller* of counsel; *William C. Cannon* with him on the brief], for the appellant.

*Guggenheimer, Strasser & Meyer* [*Charles H. Meyer* of counsel; *Jay C. Guggenheimer* with him on the brief], for the respondent.

MCAVOY, J.:

The court at Trial Term directed a verdict in favor of plaintiff in this action, which was brought to recover the amount due on certain coupons of bonds issued by the defendant company, which fell due on December 1, 1922. The plaintiff presented these coupons at a Swiss bank in Lausanne and demanded payment of the amount of money due upon the coupons, which was 2,000 francs, plaintiff having purchased 200 of the bonds and the coupons bearing interest of ten francs each. The plaintiff demanded payment in the currency of Switzerland and the defendant company refused to pay the amount of coupons in francs in the currency of Switzerland, but offered to pay the plaintiff the amount in francs of the currency of France less twelve per cent for the French income taxes. This the plaintiff refused to accept. This suit demands the full amount of the coupons in francs of the currency of Switzerland at the American dollar rate of exchange prevailing December 1, 1922, the date of maturity of the coupons, or in lieu thereof, as of April 13, 1923, the date of presentation of coupons for payment.

A jury was waived at the trial of the case, and the court by stipulation permitted to direct a verdict as though a jury were present.

The question is: What was the meaning of the word " francs " in the bonds and coupons which contained a promise to pay the bearer the sum due upon the bonds or coupons in Paris, France, at the office of Morgan, Harjes & Company, or at the option of the bearer at agencies in Belgium of two French banks, one in Brussels and one in Antwerp, and in Switzerland at a bank in Geneva and a bank in Lausanne? The nature of the instrument itself, even excluding the circumstances attendant upon the making of the bonds portends an obligation incurred to pay the amount named in French francs. The bonds are in the French language, and while in both Belgium and Switzerland the French language is widely employed, yet the inference to be drawn from the nature of the language used would more likely be that the obligation was to be discharged in the currency of the country whose native language was employed. Likewise the word " franc " as denominating a coin is in common speech accepted as referrring to the

**424** Levy *v.* Cleveland, Cincinnati, Chicago & St. L. R. Co.

First Department, October, 1924.                    [Vol. 210

French franc coin, rather than the franc coins employed in other countries such as Belgium and Switzerland. The name was derived from the device printed on a French gold piece first coined in 1575 bearing the words, " *Francorum rex.*" Several dictionaries define the " franc " as a French coin. In the ordinary sense, the statement that an obligation is to be paid in francs would commonly connote the payment in the current coin of France. The obligation itself according to the nomination of the bond is to pay francs in Paris, France, and if the agreement is to be read without the options of place construed in the sense in which it would be accepted by the ordinary mind, this place of payment would indicate that the currency of that country would be used in the discharge of the obligation. The option to the holder to receive payment elsewhere relates entirely to the place of payment and does not mention the currency of the other countries as the means of payment. It would seem, if there were to be optional payments in the currency of other countries, that the language would have designated Swiss francs as the means of payment in Switzerland, and Belgian francs in the statement of the places of payment in Belgium. There is an article in the bond which provides for the payment of principal and interest without deduction for taxes laid in the United States and without deduction for French duties or taxes resulting from the laws of the French Republic in force on May 1, 1910. This would seem to indicate that French currency was intended as the means of payment. No deductions for taxes in Belgium or Switzerland have been provided for in respect of the right of payment of the bonds and coupons in those places.

The payment of interest on 500 francs provided for in the bonds semi-annually in June and December must have intended computation of interest on a basis of a fixed monetary unit of currency throughout the period of the bonds' running. A computation laid on three monetary units which would be subject to fluctuations of French exchange in Switzerland and Belgium would make impossible the provision for meeting maturities by a previous provision of funds. The fluctuation of interest would be dependent upon the exchange value of the currency of the place where the coupon was presented as compared with French francs. The interest figures on French francs would vary according to present rates of exchange from less than four per cent interest on the bonds in Belgium to twelve per cent interest thereon in Switzerland. It is apparent that the option of payment in other places than the origin of the loan, to wit, Paris, France, was to meet the convenience of holders of coupons and bonds in other geographical locations. The fact that France was the place of issue indicates that the

currency of that country was contemplated in describing the nature of the coin of payment.

Where the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it.   If the company had reason to believe that the obligation of the bond would be understood by the promisee as an agreement to pay French francs, it must be so interpreted.   (*White* v. *Hoyt*, 73 N. Y. 505; *Gillet* v. *Bank of America*, 160 id. 549, 555; *U. S. Rubber Co.* v. *Silverstein*, 229 id. 168; *Stanton* v. *Erie R. R. Co.*, 131 App. Div. 879.)

Upon all the evidence, as well as upon the face of the instrument, there cannot be the slightest doubt that the defendant understood, and that it believed that its obligee would understand, that the bond was a French contract dealing with French currency.

The precise point was unequivocally decided by the Court of Appeal of Brussels in 1921 in the case of *Campagnie Generale pour l' Eclairage et le Chauffage par le Gaz* (*General Gas Heating and Illuminating Co.*) v. *Societe Magerman and Others*.   An agreement had been entered into whereby the obligor undertook to pay the interest coupons on certain bonds issued in Belgium, at the option of the bearer in Switzerland or France or Belgium, in " francs."   (No qualifying words were used.)   The coupons were presented in Switzerland and payment demanded in Swiss francs. This was refused and suit was brought.   Held, the option of the bearer was only as to the place of payment; had the obligor intended to give the word " franc " any meaning other than that which is usually connected with it in the place where the contract was made, he would have so stated explicitly; that all the attendant circumstances showed an intention to contract with reference to Belgian francs; and that the undertaking of the obligor would be satisfied by payment in the currency of the place where the contract was made, namely, Belgium.   We think this cause a precise analogue of the one under review and that the reasoning is unanswerable.

Our view is that the fact that the term " francs " is *per accidens* of common use in the three countries mentioned is not to differentiate the case from one in which a diverse nomenclature is employed for the coinage.   Surely if dollars were mentioned payable at New York or at holder's option in cities of another sovereignty, no one would expect payment in the coin of that realm.   Identity of name of coin cannot alter the meaning and intent commonly applied. The result must be the same as with diverse standards.

The judgment, therefore, should be reversed, with costs to the appellant, and judgment directed for the plaintiff for such sum as is the equivalent of the value of the coupons in French francs at

the time of presentation, less twelve per cent French income tax, with costs to the plaintiff.

CLARKE, P. J., DOWLING and FINCH, JJ., concur; MARTIN, J., dissents.

Judgment reversed, with costs to the appellant, and judgment directed to be entered for the plaintiff for such sum as is the equivalent of the value of the coupons in French francs at the time of presentation, less twelve per cent French income tax, with costs to the plaintiff. Settle order on notice.