(10 App. Div. 1.)

BARING et al. v. WATERBURY et al.

(Supreme Court, Appellate Division, First Department. November 6, 1896.)

PAROL EVIDENCE—TO SHOW CONSIDERATION OF WRITTEN CONTRACT.
    Parol evidence is admissible to show a consideration on a written contract, where the consideration is not expressed in writing.

Appeal from trial term, New York county.

Action by Thomas Baring and others against James M. Waterbury

and another. From a judgment entered on a verdict directed by the court in favor of plaintiffs, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William N. Dykman, for appellants.

Charles B. Alexander, for respondents.

O'BRIEN, J. The action was brought to recover the sum of $123,649.86, as the balance due upon a banker's sterling loan made by plaintiffs to the National Syndicate, a partnership composed of the two firms of L. Waterbury & Co. and William Wall's Sons, and two corporations, Tucker & Carter Cordage Company and Elizabethport Cordage Company. The contract and the amount due thereon are admitted. The defendants Waterbury and Marshall, who were the only ones served with a summons, or who appeared in the action, pleaded an accord and satisfaction; and their contention upon this appeal is that, not only had they made it out by such evidence as they were permitted to produce, but they were erroneously prevented from introducing competent evidence which would have conclusively established a defense relied upon. This defense is thus pleaded:

"That the plaintiffs cannot maintain this action for the reason that heretofore the plaintiffs entered into an agreement with other creditors of said syndicate above named, and with the firm of L. Waterbury & Co., whereby they agreed to look to the assets of the said syndicate for the payment of their debt incurred in the name of L. Waterbury & Co. on behalf of said syndicate, and consented, further, to the carrying out of a plan whereby it was, among other things, proposed to assign the syndicate assets to certain trustees, in trust, to pay—First, the debts of the syndicate; and, second, to adjust the interests of and distribute the surplus assets among the members of the syndicate. And thereafter the plan proposed in said agreement was in all respects carried out, including the assignment by said syndicate, and said agreement operates by way of a composition with the members of said syndicate and said creditors, and also as an accord and satisfaction of the plaintiffs' claims against the said syndicate, the said plaintiff receiving thereby a direct benefit by reason of its interest in the surplus assets derived from the sale of collateral securities held by the other syndicate creditors, and from all other assets to said syndicate belonging, as well as other benefits therein provided."

It will be noticed that, while not asserting, in so many words, that the alleged agreement was in writing, nevertheless, this defense refers to and describes the writing entered into between the parties, to which reference will be made, and it leaves but little doubt that that was the agreement which the defendants relied upon as establishing their defense of an accord and satisfaction. The defendants, however, claimed below, as they do here, that their effort was directed to showing that this written agreement was supplemented by an oral one, which was broader, and which supplied a provision, not referred to in the written agreement, relating to the consideration which should go to Waterbury & Co. for their action in turning over certain assets to the trustees appointed thereunder, and in assisting in carrying out the agreement. If we assume that the answer permitted, in addition to the agreement in writing, oral proof of this other and supplemental provision, a reference to the agreement and its purposes is essential to determine whether the defendants' contention is sound.

The debt sued upon was a debt of the National Syndicate, which at the time the agreement was entered into had liabilities aggregating a little less than $3,000,000, and had assets valued at $4,000,000; and defendants' efforts upon the trial were directed to showing that the transfer of these assets to trustees was the consideration for the accord and satisfaction.

Two paper writings were admitted in evidence, the first of which reads:

"The firm of L. Waterbury & Co. transacted its own business and has certain creditors, who have become such in the course of the transaction of the business of that firm. The National Syndicate, composed of L. Waterbury & Co., William Wall's Sons, the Tucker & Carter Cordage Company, and the Elizabethport Cordage Company, also have transacted business in the name of L. Waterbury & Co., who were its managers. L. Waterbury & Co., therefore, as the representative of the syndicate, has other creditors, who have become such in connection with the business of the syndicate. L. Waterbury & Co. have also a third class of obligations, arising out of indorsement or guaranties of the obligations of the National Cordage Company. It is now proposed to separate the assets of the syndicate from those of the firm, and to devote the assets of the syndicate to the payment of its debts incurred in the name of L. Waterbury & Co., and the assets of the firm of L. Waterbury & Co. to the payment of the creditors of that firm. The third class of debts above referred to, namely, those incurred by the indorsement or guaranties of the obligations of the National Cordage Company, will be taken care·of by the reorganization of the National Cordage Company. For the purpose of carrying out this plan it is proposed to assign the syndicate assets to certain trustees, among whom will be George C. Magoun, Ernst Thalman, and Gustav H. Gossler, in trust, to pay—First, the debts of the syndicate; and, second, to adjust the interests of and distribute the surplus assets among the members of the syndicate. Also, in furtherance of this proposition, and to avoid a receivership of the firm, or of the syndicate, or of both, which would retard and hamper the reorganization of the National Cordage Company, it is proposed to turn over all the assets of the firm of L. Waterbury & Co. to a New Jersey corporation for the purpose of liquidating the indebtedness proper of the firm of L. Waterbury & Co., as distinguished from the syndicate debts.

"We, the undersigned creditors of the National Syndicate, heretofore transacting business under the name of L. Waterbury & Co., consent to the carrying out of the foregoing plan."

This paper was signed by all the creditors of the syndicate except five, namely, the National Bank of the Republic, Ladenburg, Thalman & Co., S. W. Boocock & Co., the New York Life & Trust Company, and the Farmers' Loan & Trust Company. But testimony was offered tending to show that Boocock & Co. were Mrs. Waterbury's agents, and that, in addition, she had purchased the claim of the New York Life & Trust Company and of the Farmer's Loan & Trust Company, and had assented to the agreement; and that the National Bank of the Republic had written a letter to one of the attorneys engaged in the transaction accepting the proposition of settlement. It is conceded that the firm of Ladenburg, Thalman & Co. did not sign. It was executed by the plaintiffs conditionally, "to be binding when signed by all the creditors of syndicate." It being conceded that all did not sign, even though we assume that the paper in question was not the whole agreement, still, whatever the agreement was, it was subject to the condition affixed to it by plaintiffs. Though signed by all, this would not vary the stipulation attached to plaintiffs' signature. Thus, at the outset, there is an insuperable obstacle in the

way of establishing the defense. But, as we understand it, the defendants, while admitting the condition annexed to plaintiffs' signature, insist that they were induced to turn over property to the trustees for the syndicate, and thus, having changed their position as the result of what was said by the plaintiffs, that the latter are estopped from denying that the settlement did so operate as an accord and satisfaction.

The other paper produced in evidence was the deed of trust, by which the syndicate transferred to one of the plaintiffs and three other persons, named as trustees, all of the assets of the syndicate, in trust for the following purposes:

"First. To pay the debts of the said syndicate to others than the members of said syndicate, and to that end to make such adjustment, compromise, extension, and settlement of said indebtedness, or any part thereof, and of any liability or liabilities of said syndicate, as said trustees may think best, and in their discretion and best judgment if and when and in such amounts as they deem desirable to convert the said assets into money and apply the same or the proceeds in settlement or compromise and satisfaction of said indebtedness, or in payment of the said indebtedness of the said syndicate in full, if they think best, and if assets are sufficient therefor, and in case said assets are insufficient therefor then to so apply the same or the proceeds thereof pro rata. In case any of the creditors of said syndicate shall have specific collateral as security for the indebtedness of said syndicate to such creditor, the said trustees shall make such arrangements as they deem best with said creditors in pursuance of the purposes hereof, either redistributing, transferring, diminishing, or increasing the said specific collaterals, or by repledging, rehypothecating, or remortgaging the same, or otherwise, as in their discretion they deem best. Second. After the payment of said indebtedness of said syndicate, then to pay the debts of said syndicate to its members, and to that end to apply the residue of said assets, or the proceeds thereof, to the payment of the several sums to which the parties to said syndicate may respectively be entitled under and by the terms of 'Exhibit A,' less, however, such sums as any of the said members may have heretofore received upon account. Third. To distribute the surplus, if any, of said assets, or the proceeds thereof, remaining after the execution of the preceding trusts to the members of said syndicate, in the proportion in which said members shall then respectively be entitled thereto."

It was insisted below, as here, that, as the consideration which moved the defendants to assent to this plan, and make these transfers and assignment, is nowhere stated in the writing, they were entitled to show by parol the entire agreement between the parties, and thus by oral testimony to fill out and show the complete contract. As already intimated, the answer in no way refers to any other or different contract than that contained in the writings, and the testimony offered was not directed to showing any other or different agreement. The appellants insist, that the paper writings were to be legally construed as a composition, and, so far as Waterbury & Co. were concerned, as an accord and satisfaction; and, the trial judge not having assented to this construction,—in which we think he was clearly right,—the defendants sought to strengthen their position by oral testimony which, either by way of adding a new provision to the agreement, or by way of estoppel upon the plaintiffs, would make out their defense.

Counsel contends that the true construction of the writings is that the consideration which Waterbury & Co. were to receive for turning over their assets, together with inducing Waterbury's wife to pur-

chase the claims, and to part with valuable real estate, which was turned over to the trustees, was their release from the syndicate indebtedness. There is no doubt that it was thought, and in the contemplation of all those interested, that the result of the plan proposed would be to get rid of Waterbury & Co.'s obligations; because, as shown, the assets which were turned over were valued at $4,000,-000, whereas the indebtedness was less than $3,000,000, and the agreement, instead of providing for releasing Waterbury & Co., was specific in providing for turning over to the syndicate the surplus which it was expected would be realized after the payment of all indebtedness. And we think that the failure to realize the expectations, which were shared in by all, that these assets were more than sufficient to pay all claims, prevented the success of the agreement, and led to the present suit. Undoubtedly, if, in addition to what is in writing, the evidence which the defendants offered had been directed to showing that there was a supplemental agreement relating to the consideration which Waterbury & Co. were to receive for turning over their assets, it would be admissible; or, if the effort of the defendants had been directed to showing that, as the result of representations made by the plaintiffs, they had been induced to part with valuable assets, and thus change their position, there would be some ground for claiming an estoppel. Most of the questions sought to elicit the view which the plaintiffs or their counsel took of the agreement, or their interpretation or construction of it; and thus nearly all the oral evidence offered was by way of interpretation of the paper, and directed to showing the sense in which the defendants accepted it, or how they or the plaintiffs or somebody else supposed or said it would operate. While, undoubtedly, the law is that, "where the terms of a promise admit of more senses than one, it is to be interpreted in the sense in which the promisor had reason to suppose it was understood by the promisee" (White v. Hoyt, 73 N. Y. 505), no showing was made upon the trial for the application of this rule. Anything less than direct representations made by the plaintiffs, or by persons who, it was claimed, had induced the defendants to sign and carry out the written agreement, could not be competent to affect or destroy the validity of the agreement; nor could mere conversations, no matter between whom held, as to individual views concerning the construction or interpretation of the contract, be material or competent, where the contract itself was clear and unambiguous. In the latter case, undoubtedly, the construction which the parties themselves would place upon the language used and their conduct, if mutually regulated by such construction, would go a long way with the court in determining what was the true interpretation. We do not find, however, any ambiguity in the language employed, and therefore there is no ground for any other rule of interpretation than that which requires that the language shall be given its ordinary and well-defined meaning.

A question, however, is made whether the writings contain the entire agreement; and the appellants, insisting that they do not, assign as error the refusal to permit them by competent evidence to show that fact. In addition, there were certain rulings made, excluding

evidence, which, we think, were erroneous. It has long been the law that, in the absence of any consideration expressed in an agreement as moving to one who is a party thereto, it is entirely competent to prove by parol what the consideration was, although the agreement itself was in writing. Here, according to the plan of reorganization, and the marshaling of the debts and assets which were owned by Waterbury & Co., or which they could control, the part which they were to take and what they were to do were defined by the contract; but it is silent upon the question of what they were to receive, and they attempted upon the trial to prove this in several ways, but in each direction they were stopped by the rulings excluding the evidence. The error into which the learned trial judge seems to have fallen in this regard was no doubt due to the fact that he felt constrained by an erroneous construction put upon the answer by another judge at trial term. The latter assumed that there was no defense of accord and satisfaction, and it was not passed upon; but what was passed upon was the question as to the results that would flow if the trustees sold the collaterals which were turned over to them under the trust agreement without giving notice of sale. As we have seen, however, this was a mistake, because, in addition, an accord and satisfaction was properly pleaded in the answer. The questions put to the members of the firm of Waterbury & Co. as to what Magoun stated would be the consideration, the latter being dead, were incompetent; but the rulings to which we refer were upon the questions asked of other witnesses, which were entirely competent and relevant, and which were directed to showing the consideration which moved Waterbury and Marshall to assent to the plan and make the transfers and assignments, and which is nowhere stated in the writings. When we recall that there is no writing recording the general agreement between them and their creditors on the one part, the syndicate creditors on another part, and the creditors of the National Cordage Company on the other part, a situation is presented in which oral testimony was competent to show, if it could be done, the entire agreement. Such testimony, of course, could not be used to vary or contradict what was in writing, but would be available in showing what was the entire agreement, and whether that included as the consideration the discharge of Waterbury & Co. from their debts.

For the reason, therefore, that we think no sufficient opportunity was afforded Waterbury & Co. of establishing, if they could do so, the defense, which they pleaded, of an accord and satisfaction, the judgment must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.