(83 Misc. Rep. 16.)

### CHAPMAN v. GEORGE R. READ CO.

(Supreme Court, Appellate Term, First Department. December 4, 1913.)

1. CONTRACTS (§ 169*)—CONSTRUCTION.

   A contract admitting of more than one meaning is to be interpreted with regard to the surrounding circumstances and the apparent purpose sought to be accomplished, and its promise given the sense the promisor had reason to believe it was understood by the promisee.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 752; Dec. Dig. § 169.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Brokers (§ 64*)—Employment to Sell Lease—Nature of Undertaking.
   In the absence of special agreement, a broker employed to sell a lease does not become a guarantor of the proposed lessee, or assume the obligation of compelling him to take the lease; and the presumption is that his employment did not include such obligation.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 67, 97; Dec. Dig. § 64.*]

3. Principal and Agent (§ 190*)—Contract of Agent—Personal Liability —Evidence.
   Evidence in an action on an alleged contráct *held* insufficient to show any personal ündertaking of defendant, the general rental agent of the owner of a building, to find for plaintiff, lessee of offices therein, a subtenant therefor; but to show any undertaking by him was as agent of a disclosed principal, the owner of the building, so that he was not liable thereon.

   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 718–720; Dec. Dig. § 190.*]

4. Trial (§ 159*)—Dismissal of Complaint.
   Evidence of plaintiff, in an action on an alleged contract, being insufficient to prove the contract with defendant, but showing any contract of plaintiff was with another, defendant's motion to dismiss the complaint at the close of the evidence should have been granted.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 359–367; Dec. Dig. § 159.*]

Appeal from City Court of New York, Trial Term.

Action by Charles M. Chapman against the George R. Read Company. From a judgment for plaintiff, defendant appeals. Reversed and dismissed.

See, also, 149 App. Div. 52, 133 N. Y. Supp. 625.

Argued October term, 1913, before SEABURY, GUY, and BIJUR, JJ.

Wentworth, Lowenstein & Stern, of New York City (Louis Lowenstein, of New York City, of counsel), for appellant.

Kindleberger & Robinson, of New York City (E. Crosby Kindleberger, of New York City, of counsel), for respondent.

GUY, J.    This court on a previous appeal determined that the pleadings herein set forth a good cause of action, and the Appellate Division, in affirming the decision of this court, has stated the cause of action, as alleged in the pleadings, to be "an absolute undertaking on the part of the defendant, which had entire and exclusive charge of renting the offices in the building in question, to obtain a subtenant on the terms set forth, for the remainder of plaintiff's term to a tenant which it represented that it had obtained, inconsideration of the immediate surrender of the office by plaintiff, and an agreement on his part to pay it (defendant) a commission, and that relying thereon he (plaintiff) vacated the offices and surrendered possession."

The question now presented to this court in considering the first ground of appeal, defendant's exception to the denial of defendant's motion to dismiss the complaint at the close of the case, is whether plaintiff has proven the cause of action set forth in his complaint.

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In determining this question it is proper that this court should bear in mind the exceptional character of the contract alleged by plaintiff.

[1] When the terms of an alleged promise admit of more meanings than one, they are to be interpreted in the sense in which the promisor had reason to believe it was understood by the promisee. White v. Hoyt, 73 N. Y. 511. Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish. Robertson v. O. E. Co., 146 N. Y. 20, 40 N. E. 390.

[2] In Carmody v. N. Y. Central R. R. Co., 146 App. Div. 400, 131 N. Y. Supp. 160, Mr. Justice Woodward writing the opinion, the court said:

"This story is so at variance with the usual conduct of men, so out of harmony with the experience of mankind, that the evidence in its support ought to be of the most unquestioned character in order to carry conviction. * * * In determining the weight of evidence we should take into consideration the inherent probabilities of the case; the relative likelihood of the two stories."

So, in the case at bar involving an alleged agreement between a real estate broker and a person employing him to find a lessee, the court may properly consider that, in the ordinary course of dealings between real estate agents or brokers and their employers, the duty and obligation of the broker is fulfilled when he produces a customer ready, able, and willing to lease the employer's premises on the terms stated by the employer or on terms satisfactory to him. If the broker produces such a proposed lessee, he is entitled to his commission; if he fails to produce such a proposed lessee, he fails to earn any commission. But in no event does he, except by special contract to this effect, become a guarantor of the proposed lessee or assume the obligation of compelling the proposed lessee to perform his contract. A presumption arises, on the employment of a broker by one seeking to sell or lease property through him, that the broker's right and obligations are those which flow ordinarily from such an employment, and this presumption can only be overcome by proof of a very convincing character that it was the intent of the parties to enter into an agreement of a different character.

[3] The facts as established conclusively by the evidence in this case are as follows:

The plaintiff occupied offices in the building known as Sixty Wall Street, owned by "Sixty Wall Street," a corporation, under a written lease for a term of three years, having at the time of the alleged contract with defendant an unexpired term of about one year and nine months to run. Shortly prior to April 11, 1909, plaintiff entered into a new partnership which necessitated his having larger offices. He looked at larger offices in the Sixty Wall Street building, but could find none at a sufficiently low rental to answer his purposes, and announced that he would have to leave the building. He then asked the owner of the building to release him from his obligations on the unexpired term of the lease, which the owner refused to do, but told him that it would allow him to sublet the rooms and stated that he

(the plaintiff) should arrange with Mr. Class, who was connected. with the office of this defendant, the owner's general agent for the letting of offices in that building. Plaintiff, by direction of the owner, saw Mr. Class. Plaintiff testified:

"I asked him if he would undertake to rent my quarters at Sixty Wall Street, room 1301, and he said he would do everything possible to rent the quarters."

Plaintiff does not claim that any contract was entered into at that time between him and the defendant, the defendant being at that time merely the designated agent of the owner, to which plaintiff had been referred as to the making of arrangements for subletting his premises. Plaintiff testifies that Mr. Class came in several times between April 11th and 17th to report to him the efforts he had made to sublet plaintiff's office, and that on April 17th he came into a barber shop where plaintiff was and had a conversation with plaintiff, which plaintiff claims constituted the contract upon which this action is based. Plaintiff details the conversation as follows:

"He stated he had a party who would take my quarters, room 1301, provided I would take $1,000, and if I were willing to take that sum—I was paying $1300—and pay the difference for the two years. I said I was not only willing to take—make such a contract as that and pay the difference, but would also give him a commission. He said with those facts I can close this contract, or the contract is practically settled. He said it was all settled; it only depended upon me to say whether I would accept the terms."

Plaintiff further testifies (fol. 80) that Class said, in response to his statement that he would pay a commission:

"Oh, never mind the commission. I can rent it inasmuch as you are willing to take it."

That is the complete contract on which plaintiff relies. Does that conversation contain an agreement by defendant's authorized representative to furnish to plaintiff a party who would lease plaintiff's premises on the terms stated, for a consideration passing from plaintiff to defendant? In the determination of this question, the previous relationship of the parties has an important bearing. Defendant up to that time had no contractual relations with plaintiff, but had acted merely as the designated agent of the owner in an effort, by subletting, to relieve the plaintiff, as a tenant, of the burden of his unexpired lease; he having determined to quit the building. Plaintiff admits that there was no actual employment of defendant by plaintiff prior to April 17th, or at least no contract upon which he relies in this action. On the 17th of April, Mr. Class entered hastily the barber shop, where he found plaintiff, and reported to him further efforts on his part, which, in his opinion, would result in the subletting of the premises if plaintiff would immediately surrender possession of the premises and accept $1,000 per year rental, instead of $1,300. So far as appears from the entire interview narrated by the plaintiff, this was but a representation as to an existent fact and a statement of belief on the part of the agent that the proposed lessee would take the premises. There is nothing in the entire interview which distinguishes it from the report ordinarily made by a broker to his employer when

he believes he has found a customer. There is no word of agreement by which the defendant undertook to guarantee the signing of the lease by the proposed lessee, or an assumption of obligation on the part of the defendant to have such a lease signed. Plaintiff testifies that the final words in this interview, as spoken by Mr. Class, were:

"Oh, never mind the commission. I can rent it inasmuch as you are willing to take it."

Here again is a mere expression of opinion, not in any sense an assumption of the obligation to rent the premises on behalf of the plaintiff. A familiar rule in the construction of contracts, or in the interpretation of spoken words which are susceptible of more than one meaning, is that they must be interpreted in the light of the acts and declarations of the parties immediately following the alleged making of the contract. Plaintiff alleges that the contract was made on April 17, 1911. It is matter of common knowledge that the time for the yearly renting of offices in the lower part of Manhattan borough is the 1st day of May in each year. Plaintiff alleges that one of the considerations for the making of the contract between plaintiff and defendant was the immediate surrender of the premises by the plaintiff, evidently in order that they might be rented from the 1st of May; yet plaintiff continued in possession of the premises down to the 29th day of May, without any effort on his part to compel the defendant to produce his customer, without any notification to defendant that he would hold defendant liable if the proposed lessee was not produced, or if he failed to sign a lease, without any tender of a lease or without any effort to immediately surrender the premises. The conclusive evidence, however, as to the construction which plaintiff himself put upon the alleged contract of April 17, 1909, is furnished by plaintiff's verified answer in an action for rent brought against plaintiff by the owner of the building in August, 1909, some four months after the alleged making of the contract between plaintiff and defendant. During that entire intervening period there is no evidence that plaintiff made any claim or demand upon defendant or any offer to surrender the premises to defendant, or to defendant's alleged customer or to the owner of the building.

On August 23, 1909, plaintiff, having, as a practicing lawyer a full knowledge and understanding of the legal force and effect of the language used by him, swore to an answer containing the following allegation:

"On information and belief that plaintiff has not at any time used its best efforts, nor any substantial effort, to relet said premises as agreed; but on the contrary, has willfully permitted and allowed a third party, with whom it had an agreement to take the lease of the residue of the term demised to defendant as aforesaid, to withdraw from said agreement."

Here, then, is plaintiff's statement, under oath, four months after the alleged making of the contract with defendant, in which statement plaintiff states his belief that the contract which he now seeks to establish as against the defendant was in fact made between him and the owner of the building. It is a clear, unequivocal statement, under

oath, that in the interview of April 17, 1909, between Class and the plaintiff, Class acted as the representative of the owner of the building, and that the agreement alleged to have been made at that time was between the plaintiff and the owner. It is also a principle too familiar to need discussion that, where a person acts as the agent of a disclosed principal, the agent cannot be held liable personally for his acts. We have here plaintiff's positive statement, under oath, that in the making of the alleged agreement of April 17, 1909, Class, as the representative of the defendant, acted as the agent of the disclosed principal, the owner. Plaintiff's own evidence on this point is conclusive as against his right of recovery.

The alleged contract between the plaintiff and defendant is also lacking in the important element of a consideration as between plaintiff and defendant. Plaintiff alleges two considerations for the promise made by defendant: First, the payment of a commission. This is entirely disproved by plaintiff's own testimony that Class, in response to plaintiff's statement that he would pay a commission, replied, "Oh, never mind the commission." There was evidently no meeting of the minds of plaintiff and Class representing the defendant that the defendant should be paid a commission. His statement, "Oh, never mind the commission," would have been strong evidence against any claim for commission by defendant had the contemplated lease been executed. The other consideration alleged by plaintiff is "the immediate surrender of the premises." Surrender to whom? Not to the defendant; not to the proposed lessee. Both the plaintiff and defendant's representative Class, as lawyer and real estate agent, were fully conversant with the meaning of the term "immediate surrender of the premises" both in its legal sense and the sense in which it is used in the real estate business, i. e., the turning over to the owner of premises which have been occupied by a lessee. This is convincing evidence that the contract was understood and intended to be an agreement with the owner of the building, through its designated agent, to do a particular thing, i. e., surrender the immediate possession of the premises to the owner in consideration of the owner obtaining a subtenant for the premises.

It has already been adjudicated in the case hereinbefore referred to, brought by the owner in August, 1909, against the plaintiff, for rent, that the alleged contract with the owner did not constitute a good defense in the action for rent; judgment having been rendered in favor of the owner and against this plaintiff in that case. The claim now made that the contract was with the defendant, and not with the owner, appears to be a mere afterthought following unsuccessful litigation with the owner.

[4] Plaintiff having failed utterly to prove the contract alleged in his complaint and, on the contrary, having established conclusively by his detailed statement of the interview which forms the basis of the alleged contract, and by his subsequent declarations under oath, that whatever contract was made on April 17, 1909, was a contract, not between plaintiff and defendant, but between plaintiff and the owner of the building, the defendant's motion to dismiss the complaint at

the close of the case should have been granted, and the refusal to grant the motion constituted reversible error. It is unnecessary to consider any of the other grounds of appeal, though, even had there been sufficient evidence to warrant the submission of the case to the jury, the verdict is so against the overwhelming weight of evidence that it could not be permitted to stand.

The judgment must therefore be reversed, with costs, and the complaint dismissed, with costs. All concur.